SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
Alan R. Plutzik, Of Counsel (Bar No. 077758)
L. Timothy Fisher, Of Counsel (Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0770
Facsimile: (925) 945-8792

**E-filing**

*Attorneys for Plaintiffs*

[Additional Counsel Appear on Signature Page]

**ORIGINAL FILED**

NOV 1 6 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT

ADR

## NORTHERN DISTRICT OF CALIFORNIA

C07-05840 SC

| | |
|---|---|
| TARAS BODNARCZUK, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| | ) **CIVIL ACTION NO.** |
| Plaintiff, | ) ) |
| vs. | ) **CLASS ACTION COMPLAINT** |
| | ) |
| MICRUS ENDOVASCULAR CORPORATION, JOHN T. KILCOYNE, and ROBERT A, STERN, | ) ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) ) |

Plaintiff, Taras Bodnarczuk ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Micrus Endovascular Corporation ("Micrus" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION AND OVERVIEW

2   1.    This is a federal class action on behalf of purchasers of Micrus' securities between

3   February 12, 2007 and September 17, 2007, inclusive (the "Class Period"), seeking to pursue

4   remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

5   2.    Micrus develops, manufactures, and markets implantable and disposable medical

6   devices used in the treatment of cerebral vascular diseases. The Company's products are used by

7   interventional neuroradiologists, interventional neurologists, and neurosurgeons. Micrus sells its

8   products through a direct sales force in the United States, Canada and Europe.

9   3.    The Company shocked investors on September 17, 2007 when it revealed that it was

10  experiencing regulatory approval delays in China and Japan, and slow growth and decreased sales in

11  North America. Additionally, the Company significantly reduced its 2008 revenue guidance to

12  between $65 million and $75 million, as compared with the Company's previously issued revenue

13  guidance of between $80 million and $85 million for 2008.

14  4.    On this news, the Company's shares fell $6.20 per share, or over 26.3 percent, to close

15  on September 18, 2007 at $17.37 per share, on unusually heavy trading volume.

16  5.    The Complaint alleges that, throughout the Class Period, defendants failed to disclose

17  material adverse facts about the Company's financial well-being and prospects. Specifically,

18  defendants failed to disclose or indicate the following: (1) that the Company was experiencing

19  increased competition and seasonal slowing, which led to slower sales in North America; (2) that the

20  Company was encountering increased regulatory issues in China and Japan, which hampered its

21  ability to obtain product approvals and offer certain products for sale in these markets; and (3) that,

22  as a result of the foregoing, defendant's statements about the Company's financial well-being and

23  future business prospects were lacking in any reasonable basis when made.

24  6.    As a result of defendants' wrongful acts and omissions, and the precipitous decline in

25  the market value of the Company's securities, Plaintiff and other Class Members have suffered

26  significant losses and damages.

27

28

CLASS ACTION COMPLAINT

1

## JURISDICTION AND VENUE

2      7.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the

3   Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R.

4   § 240.10b-5).

5      8.      This Court has jurisdiction over the subject matter of this action pursuant to Section

6   27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

7      9.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act,

8   15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein,

9   including the preparation and dissemination of materially false and misleading information, occurred

10   in substantial part in this Judicial District. Additionally, the Company's principal executive offices

11   are located in this Judicial District.

12      10.      In connection with the acts, conduct and other wrongs alleged in this Complaint,

13   defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

14   including but not limited to, the United States mails, interstate telephone communications and the

15   facilities of the national securities exchange.

16

## PARTIES

17      11.      Plaintiff, Taras Bodnarczuk, as set forth in the accompanying certification,

18   incorporated by reference herein, purchased Micrus' securities at artificially inflated prices during the

19   Class Period and has been damaged thereby.

20      12.      Defendant Micrus is a Delaware corporation with its principal executive offices

21   located at 821 Fox Lane, San Jose, California.

22      13.      Defendant John T. Kilcoyne ("Kilcoyne") was, at all relevant times, the Company's

23   President and Chief Executive Officer ("CEO").

24      14.      Defendant Robert A. Stern ("Stern") was, at all relevant times, the Company's Chief

25   Financial Officer ("CFO") and an Executive Vice President.

26      15.      Defendants Kilcoyne and Stern are collectively referred to hereinafter as the

27   "Individual Defendants." The Individual Defendants, because of their positions with the Company,

28   possessed the power and authority to control the contents of Micrus' reports to the SEC, press

1   releases and presentations to securities analysts, money and portfolio managers and institutional

2   investors, i.e., the market. Each defendant was provided with copies of the Company's reports and

3   press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the

4   ability and opportunity to prevent their issuance or cause them to be corrected. Because of their

5   positions and access to material non-public information available to them, each of these defendants

6   knew that the adverse facts specified herein had not been disclosed to, and were being concealed

7   from, the public, and that the positive representations which were being made were then materially

8   false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as

9   those statements were each "group-published" information, the result of the collective actions of the

10  Individual Defendants.

11                          **SUBSTANTIVE ALLEGATIONS**

12                                  **Background**

13          16.     Micrus develops, manufactures, and markets implantable and disposable medical

14  devices used in the treatment of cerebral vascular diseases. The Company's products are used by

15  interventional neuroradiologists, interventional neurologists, and neurosurgeons. Micrus sells its

16  products through a direct sales force in the United States, Canada and Europe.

17
                        **Materially False and Misleading**
18                  **Statements Issued During the Class Period**

19          17.     The Class Period begins on February 12, 2007. On this day, the Company issued a

20  press release entitled "Micrus Endovascular Third Quarter Results Feature Revenues Up 92%."

21  Therein, the Company, in relevant part, stated:

22              Micrus Endovascular Corporation (Nasdaq:MEND) today announced
                financial results for the three and nine months ended December 31,
23              2006.

24
                Micrus reported record quarterly revenues for the third quarter of
25              fiscal 2007 of $15.5 million, an increase of 92%, compared with
                revenues of $8.1 million for the third quarter of fiscal 2006. Higher
26              revenues resulted from an increase in sales of microcoil products.
                Revenues from the Americas grew 82% to $8.4 million and European
27              revenues increased 34% to $4.4 million, both compared with the third
                quarter of fiscal 2006. Revenues from Asia Pacific for the third
28

                                      - 4 -

quarter of fiscal 2007 were $2.7 million, including sales to the Company's distributor in Japan of $2.4 million.

"Our record quarterly revenues provide tangible evidence of our ability to gain market share as we execute on our growth strategy that includes expanding geographically, leveraging our sales team, introducing technologically advanced products and, importantly, delivering products that we believe are safer and easier for interventionalists to use," said John Kilcoyne, Micrus Endovascular president and CEO. "The acquisition late last year of VasCon, LLC through our newly-formed subsidiary, Micrus Design Technology, Inc., represents a significant step toward future growth by strengthening a core competency in developing access and delivery systems, and by supporting expansion into the ischemic market, where we see significant growth opportunity. We also believe that Micrus Design Technology will enable us to significantly reduce costs over a wide range of our products."

* * *

**Year-to-Date Financial Results**

For the nine months ended December 31, 2006, revenues increased 100% to $42.8 million from $21.3 million in the comparable prior-year period, reflecting higher sales of microcoil products. Operating expenses for the first nine months of fiscal 2007 were $37.4 million, versus $20.9 million in the prior-year period. [Emphasis added.]

18.     On May 10, 2007, the Company issued a press release entitled "Micrus Endovascular Reports 79% Increase in Full-Year Revenues and Fourth Quarter Revenue Growth of 40%; Introduces Fiscal 2008 Revenue Guidance." Therein, the Company, in relevant part, stated:

Micrus Endovascular Corporation (Nasdaq:MEND) today announced financial results for the three months and fiscal year ended March 31, 2007.

Micrus reported record quarterly revenues for the fourth quarter of fiscal 2007 of $16.0 million, an increase of 40%, compared with revenues of $11.4 million for the fourth quarter of fiscal 2006. Higher revenues resulted from an increase in sales of microcoil products. Revenues from the Americas grew 69% to $9.1 million and European revenues increased 50% to $5.5 million, both compared with the fourth quarter of fiscal 2006. Revenues from Asia Pacific were $1.4 million, and included sales of $1.2 million to the Company's distributor in Japan, compared with revenues of $2.4 million for the comparable quarter in fiscal 2006, which included initial sales of $2.2 million to the Company's distributor in Japan.

1
2
3
4
5
6
7

"Our strong fourth quarter financial results cap off a year of tremendous accomplishments at Micrus," said John Kilcoyne, president and CEO. "Full-year revenue growth of 79% demonstrates our ability to gain share in the growing hemorrhagic and ischemic markets. During fiscal 2007 we successfully executed on an aggressive business strategy by introducing important new coils, an intracranial stent platform and access products, all of which we believe provide physicians with superior solutions. Indeed, during the fourth quarter 21% of our revenues came from new products released in the last 18 months and we further benefited from strong sales growth in European markets.

8
9
10
11
12
13

"We believe our growth momentum will continue in the current fiscal year with the continued launch of new products that furthers our progress towards becoming a full-line endovascular company, and advances us toward our goal of capturing 100% of every procedural dollar. Additionally, we currently expect to enter the Chinese market in the second quarter of fiscal 2008, thereby achieving another major milestone for Micrus. We also expect gross margin improvements through increased contributions from new higher-margin products, and by moving a portion of our manufacturing to Micrus Design Technology," he added.

14

* * *

15
16
17
18
19
20

The net loss attributable to common stockholders for the fourth quarter of fiscal 2007 was $1.4 million, or $0.09 per share on 15.1 million weighted-average shares outstanding. The net loss for the fourth quarter of fiscal 2007 included $945,000, or $0.06 per share, of non-cash stock-based compensation expense. The net loss attributable to common stockholders for the fourth quarter of fiscal 2006 was $2.5 million, or $0.18 per share on 14.2 million weighted-average shares outstanding. The net loss for the fourth quarter of fiscal 2006 included $209,000, or $0.01 per share, of non-cash stock-based compensation expense.

21
22

**Fiscal 2007 Financial Results**

23
24

For the fiscal year ended March 31, 2007, revenues increased 79% to $58.8 million from $32.8 million in the prior fiscal year, reflecting higher sales of microcoil products. Operating expenses for fiscal 2007 were $51.3 million, versus $32.1 million in fiscal 2006.

25
26
27
28

The net loss attributable to common stockholders for fiscal 2007 was $5.5 million, or $0.38 per share on 14.6 million weighted-average shares outstanding. The net loss for fiscal 2007 included $2.6 million, or $0.18 per share, of non-cash stock-based compensation expense. This compares with a net loss attributable to common stockholders for fiscal 2006 of $8.9 million, or $0.79 per share on 11.2 million

1  weighted-average shares outstanding. The net loss for fiscal 2006
2  included $389,000, or $0.03 per share, of non-cash stock-based
   compensation expense.

3                                    * * *

4  **Fiscal 2008 Revenue Guidance**

5  *Micrus today introduced revenue guidance for fiscal 2008. The
6  Company expects fiscal 2008 revenues to be in the range of $80
   million to $85 million, reflecting growth of 36% to 45% compared
7  with fiscal 2007 revenues.* This guidance reflects the Company's
   expectations that fiscal 2008 revenues will be largely due to sales of
8  microcoils, with modest contribution from sales of catheters,
9  guidewires and stents. [Emphasis added.]

10     19.    Also on May 10, 2007, Micrus held an earnings conference call with analysts and

11  investors. During this call, Defendant Stern, in relevant part, stated:

12          [ANALYST]: ... And also, maybe if you could provide a little bit of
            update as far as projected operational expenses? I think in consensus
13          and my model, I have you getting profitable this next year. And I was
            wondering if you could talk about how the operational expenses are
14          going to probably track over the next year? ... The expenses going
15          forward or the fact that at least my model, we have you getting
            profitable.

16
            BOB STERN: I have to be honest with you. *Looking at things on a
17          pro forma basis and you take out the FAS 123 and the acquisition
            costs and the costs related to MDT, you're looking at a profitable
18          company.* So we gave guidance that suggested somewhere between
19          16 and 16.5, we would be profitable after the MDT acquisition. And
            we are right on that number. *So operationally, in fiscal year '08, you
20          would expect at some point, and for the year, that we would be very
            close or profitable.* [Emphasis added.]

21
       20.    On August 1, 2007, the Company issued a press release entitled "Micrus
22
   Endovascular Signs Distribution Agreement to Enter Chinese Market." Therein, the Company, in
23
   relevant part, stated:
24
            Micrus Endovascular Corporation (Nasdaq:MEND) today announced
25          the signing of a five-year, exclusive agreement with Beijing Tian Xin
            Fu Medical Appliances Co., Ltd. (TXF Medical), for the distribution
26          in China of Micrus' implantable and disposable medical devices used
            in the treatment of neurovascular diseases. Micrus expects to begin
27          distributing its products through TXF Medical in the Chinese market
28          upon receiving regulatory approval.

Under the terms of the agreement, TXF Medical will distribute Micrus' full product line throughout China. Micrus plans to formally introduce its products during the World Federation of Interventional and Therapeutic Neuroradiology meeting in Beijing in September.

TXF Medical, founded in 1995, has set up a skilled professional marketing group composed of doctors and nurses with experience in clinical medicine and customer service. The TXF team has cooperated closely with specialized products manufacturers such as Johnson & Johnson, offering high-quality and innovative products and services in the areas of neurosurgery, orthopedics and cardiovascular applications.

"With approximately 7,500 endovascular procedures performed in Chinese hospitals last year and a countrywide procedure growth rate estimated at 25 to 30 percent, China is the world's fastest-growing neurointerventional market. Our entry is a significant milestone in our drive to be the premier neurointerventional company in the world," said John Kilcoyne, Micrus Endovascular president and CEO. "We engaged in a rigorous selection process before choosing a distributor for China, and we are confident that TXF Medical will be an excellent partner. TXF Medical is a reputable leader in the vascular space and we are pleased to gain access to its well-established distribution network."

21.    On August 7, 2007, the Company issued a press release entitled "Micrus Endovascular Reports 32% First Quarter Revenue Growth; Affirms Fiscal 2008 Revenue Guidance." Therein, the Company, in relevant part, stated:

Micrus Endovascular Corporation (Nasdaq:MEND) today announced financial results for the three months ended June 30, 2007.

Micrus reported record quarterly revenues for the first quarter of fiscal 2008 of $16.8 million, an increase of 32%, compared with revenues of $12.7 million for the first quarter of fiscal 2007. Higher revenues resulted primarily from an increase in sales of microcoil and non-embolic products. Revenues from the Americas grew 44% to $9.5 million and European revenues increased 57% to $5.9 million, both compared with the first quarter of fiscal 2007. Revenues from Asia Pacific were $1.4 million, and included sales of $1.1 million to the Company's distributor in Japan, compared with revenues of $2.4 million for the comparable quarter in fiscal 2007, which included initial sales of $2.2 million to the Company's distributor in Japan.

"We are pleased to report another quarter of sequential and record revenues based on continued solid execution of our growth strategy," said John Kilcoyne, president and CEO. "Important in this strategy is the introduction of new products. During the quarter, we introduced

two important new products - the Cashmere(TM) microcoil system and our highly-anticipated ENZO(TM) steerable microcatheter. The ENZO, which has been launched on a limited basis, has been very well received and we plan a worldwide introduction later this calendar year.

"We expect strong revenue growth and market share gains throughout fiscal 2008, with greater acceleration in the second half of the fiscal year, through a number of catalysts. These include expansion into the Chinese market and broadening our current product offering in Japan to incorporate stretch-resistant and Cerecyte(R) microcoils. We also expect to continue to introduce, license or acquire new products that offer clinical advantages in the treatment of both hemorrhagic and ischemic stroke," Mr. Kilcoyne added.

\* \* \*

**Fiscal 2008 Revenue Guidance**

*Micrus today affirmed its revenue guidance for fiscal 2008. The Company expects fiscal 2008 revenues to be in the range of $80 million to $85 million, reflecting growth of 36% to 45%, compared with fiscal 2007 revenues.* This guidance reflects the Company's expectations that fiscal 2008 revenues will be largely due to sales of microcoils, with modest contribution from sales of catheters, guidewires and stents. [Emphasis added.]

22.    The statements contained in ¶¶ 17 – 21 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that the Company was experiencing increased competition and seasonal slowing, which led to slower sales in North America; (2) that the Company was encountering increased regulatory issues in China and Japan, which hampered its ability to obtain product approvals and offer certain products for sale in these markets; and (3) that, as a result of the foregoing, defendant's statements about the Company's financial

**The Truth Begins to Emerge**

23.    On September 17, 2007, the Company shocked investors when it issued a press release entitled "Micrus Endovascular Revises Fiscal 2008 Revenue Guidance Based on Product

1  Approval Delays in Asia and Slower Growth in North America." Therein, the Company, in relevant

2  part, stated:

> Micrus Endovascular Corporation (Nasdaq: MEND) today announced that *it expects fiscal 2008 revenues to be between $65 million and $75 million. Previously the Company expected fiscal 2008 revenues to be between $80 million and $85 million, and is revising guidance based primarily on expectations of product approval delays in China, as well as uncertainty regarding possible approval delays in Japan. The revised guidance also reflects slower-than-anticipated sales in North America.*

> "Based upon recent discussions with our distribution partners, we believe that we will gain regulatory approvals to market the full Micrus product line in China and to expand our current product offering in Japan to include our stretch-resistant and Cerecyte(R) microcoils. However, *we believe that the timing of these approvals will be later than we had anticipated,"* said John Kilcoyne, *Micrus president and CEO. "Our previous fiscal 2008 revenue guidance included contributions of $7 million from China and $5.75 million from Japan."*

> Micrus has learned that the timing of product approvals in China will be delayed due to a pending review by the Chinese State Food and Drug Administration (SFDA) of drug and medical device approvals granted during the term of the former SFDA minister. The Company believes this review process along with more stringent approval procedures *will significantly delay review and approval of applications for new products. Therefore, the Company does not expect to recognize revenues from sales in China this fiscal year.*

> Micrus has received conflicting information as to the timing of the approvals necessary to market Cerecyte and stretch-resistant microcoils in Japan. Based on the lack of clarity following recent discussions with regulatory officials in Japan, Micrus believes it is prudent to assume that *approvals will come later than initially anticipated and this delay in product approvals will have an adverse impact on the revenues previously anticipated from sales in Japan in Micrus' revenue projections for fiscal 2008. While Micrus has already recognized $1.1 million in revenues from Japan during fiscal 2008, another $4.65 million in revenues previously anticipated in fiscal 2008 could be at risk, depending on the timing of product approvals.*

> *Micrus has recently observed slower sales than expected in North America. Management believes this is due to several factors that include weakness in budgeted non-neurovascular sales from Micrus Design Technology, the Company's Florida-based subsidiary, a seasonal slow down in coiling procedures during the*

*summer months, and increased competition. If sales do not return to anticipated levels, this could impact annual revenues for fiscal 2008 by up to approximately $3 million.* [Emphasis added.]

24.    On this news, the Company's shares fell $6.20 per share, or over 26.3 percent, to close on September 18, 2007 at $17.37 per share, on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased Micrus' securities between February 12, 2007 and September 17, 2007, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

26.    The members of the Class are so numerous that joinder of all members is impracticable.    Throughout the Class Period, Micrus' securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Micrus or, its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

28.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

CLASS ACTION COMPLAINT

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        (a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

        (b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Micrus; and

        (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

31.     The market for Micrus' securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements, and failures to disclose, Micrus' securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Micrus' securities relying upon the integrity of the market price of Micrus' securities and market information relating to Micrus, and have been damaged thereby.

32.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Micrus' securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

1    33.    At all relevant times, the material misrepresentations and omissions particularized in

2    this Complaint directly or proximately caused or were a substantial contributing cause of the

3    damages sustained by Plaintiff and other members of the Class. As described herein, during the

4    Class Period, defendants made or caused to be made a series of materially false or misleading

5    statements about Micrus' financial well-being and prospects. These material misstatements and

6    omissions had the cause and effect of creating in the market an unrealistically positive assessment of

7    Micrus and its financial well-being and prospects, thus causing the Company's securities to be

8    overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading

9    statements during the Class Period resulted in Plaintiff and other members of the Class purchasing

10   the Company's securities at artificially inflated prices, thus causing the damages complained of

11   herein.

12   **LOSS CAUSATION**

13   34.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the

14   economic loss suffered by Plaintiff and the Class.

15   35.    During the Class Period, Plaintiff and the Class purchased Micrus' securities at

16   artificially inflated prices and were damaged thereby. The price of Micrus' securities significantly

17   declined when the misrepresentations made to the market, and/or the information alleged herein to

18   have been concealed from the market, and/or the effects thereof, were revealed, causing investors'

19   losses.

20   **SCIENTER ALLEGATIONS**

21   36.    As alleged herein, defendants acted with scienter in that defendants knew that the

22   public documents and statements issued or disseminated in the name of the Company were

23   materially false and misleading; knew that such statements or documents would be issued or

24   disseminated to the investing public; and knowingly and substantially participated or acquiesced in

25   the issuance or dissemination of such statements or documents as primary violations of the federal

26   securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of

27   information reflecting the true facts regarding Micrus, their control over, and/or receipt and/or

28   modification of Micrus' allegedly materially misleading misstatements and/or their associations with

the Company which made them privy to confidential proprietary information concerning Micrus, participated in the fraudulent scheme alleged herein.

37.    Additionally, during the Class Period, and with the Company's securities trading at artificially inflated prices, Company insiders sold 299,846 shares of the Company's stock for gross proceeds of $6,568,715. This trading by Company insiders is evidenced by the following chart:

| Date of Trade | Inside Trader | Number of Shares | Price per Share | Gross Proceeds |
| --- | --- | --- | --- | --- |
| August 27, 2007 | Henson, Michael R. | 10,000 | $23.60 - $24.20 | $239,000 |
| August 24, 2007 | Henson, Michael R. | 7,777 | $23.40 - $23.42 | $182,000 |
| August 22, 2007 | HBM BioVentures[1] | 1,100 | $23.25 - $23.34 | $26,000 |
| August 21, 2007 | HBM BioVentures | 1,635 | $23.19 - $23.44 | $38,000 |
| August 21, 2007 | HBM BioVentures | 7,400 | $23.10 - $23.18 | $171,000 |
| August 20, 2007 | HBM BioVentures | 3,500 | $23.29 - $23.55 | $82,000 |
| August 20, 2007 | HBM BioVentures | 5,700 | $23.10 - $23.28 | $132,000 |
| August 17, 2007 | HBM BioVentures | 3,122 | $23.44 - $23.94 | $74,000 |
| August 17, 2007 | HBM BioVentures | 38,304 | $23.00 - $23.40 | $889,000 |
| August 17, 2007 | Robbins, Jim B. | 4,174 | $23.95 - $24.00 | $100,000 |
| August 17, 2007 | Stern, Robert A. | 1,000 | $23.00 - $23.02 | $23,000 |
| August 17, 2007 | Stern, Robert A. | 6,500 | $23.50 | $152,750 |
| August 17, 2007 | Stern, Robert A. | 1,000 | $23.00 - $23.02 | $23,000 |
| August 17, 2007 | Stern, Robert A. | 6,500 | $23.50 | $152,750 |
| August 9, 2007 | Henson, Michael R. | 7,787 | $24.25 - $24.79 | $191,000 |
| June 30, 2007 | Robbins, Jim B. | 1,191 | $24.60 | $29,298 |
| May 31, 2007 | Ruppel, Edward F. | 400 | $21.20 | $8,480 |

[1] According to SEC filings, Dr. Beat R. Mertz, a former director of Micrus, was also an investment advisor at HBM Partners AG, which acted as an investment advisor to HBM Partners. HBM Partners provided investment management services to HBM BioVentures (Cayman) Ltd.

| | | | | |
|---|---|---|---|---|
| May 31, 2007 | Hulubow, Fred | 5,111 | $21.25 - $21.31 | $109,000 |
| May 22, 2007 | Henson, Michael R. | 10,000 | $21.15 - $21.20 | $212,000 |
| May 18, 2007 | Hopkins, Leo N. | 11,203 | $20.40 - $20.43 | $229,000 |
| May 15, 2007 | Henson, Michael R. | 12,000 | $20.75 - $20.84 | $250,000 |
| May 14, 2007 | Henson, Michael R. | 12,222 | $20.60 - $20.66 | $252,000 |
| February 23, 2007 | Thiel, Jeffrey H. | 8,888 | $20.97 | $186,381 |
| February 22, 2007 | Henson, Michael R. | 8,888 | $21.00 - $21.01 | $187,000 |
| February 21, 2007 | Hopkins, Leo N. | 33,336 | $21.00 | $700,056 |
| February 20, 2007 | Hopkins, Leo N. | 41,332 | $20.65 - $20.76 | $856,000 |
| February 16, 2007 | Hopkins, Leo N. | 15,532 | $20.70 - $20.87 | $323,000 |
| February 15, 2007 | Hopkins, Leo N. | 9,800 | $21.40 - $21.78 | $212,000 |
| February 14, 2007 | Thiel, Jeffrey H. | 11,111 | $21.97 - $22.00 | $244,000 |
| February 14, 2007 | Henson, Michael R. | 13,333 | $22.02 - $22.18 | $295,000 |
| | **TOTAL:** | **299,846 Shares** | | **$6,568,715 Gross Proceeds** |

### Applicability of Presumption of Reliance: Fraud On The Market Doctrine

38.    At all relevant times, the market for Micrus' securities was an efficient market for the following reasons, among others:

(a)    Micrus' securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Micrus filed periodic public reports with the SEC and the NASDAQ;

(c)    Micrus regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the

1    financial press and other similar reporting services; and

2        (d)    Micrus was followed by several securities analysts employed by major

3    brokerage firms who wrote reports which were distributed to the sales force

4    and certain customers of their respective brokerage firms.  Each of these

5    reports was publicly available and entered the public marketplace.

6        39.    As a result of the foregoing, the market for Micrus' securities promptly digested

7    current information regarding Micrus from all publicly-available sources and reflected such

8    information in the price of Micrus' securities.  Under these circumstances, all purchasers of Micrus'

9    securities during the Class Period suffered similar injury through their purchase of Micrus' securities

10   at artificially inflated prices and a presumption of reliance applies.

11   **NO SAFE HARBOR**

12       40.    The statutory safe harbor provided for forward-looking statements under certain

13   circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

14   Many of the specific statements pleaded herein were not identified as "forward-looking statements"

15   when made.  To the extent there were any forward-looking statements, there were no meaningful

16   cautionary statements identifying important factors that could cause actual results to differ materially

17   from those in the purportedly forward-looking statements.  Alternatively, to the extent that the

18   statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are

19   liable for those false forward-looking statements because at the time each of those forward-looking

20   statements was made, the particular speaker knew that the particular forward-looking statement was

21   false, and/or the forward-looking statement was authorized and/or approved by an executive officer

22   of Micrus who knew that those statements were false when made.

23   **FIRST CLAIM**
**Violation of Section 10(b) of**
24   **The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**
25

26       41.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

27   forth herein.

28

42.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Micrus' securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

43.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Micrus' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Micrus' financial well-being and prospects, as specified herein.

45.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Micrus' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Micrus and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Micrus' securities during the Class Period.

46.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or

1   directors at the Company during the Class Period and members of the Company's management team

2   or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities

3   as a senior officer and/or director of the Company, was privy to and participated in the creation,

4   development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii)

5   each of these defendants enjoyed significant personal contact and familiarity with the other

6   defendants and was advised of, and had access to, other members of the Company's management

7   team, internal reports and other data and information about the Company's finances, operations, and

8   sales at all relevant times; and (iv) each of these defendants was aware of the Company's

9   dissemination of information to the investing public which they knew or recklessly disregarded was

10  materially false and misleading.

11      47.    The defendants had actual knowledge of the misrepresentations and omissions of

12  material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

13  ascertain and to disclose such facts, even though such facts were available to them. Such defendants'

14  material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose

15  and effect of concealing Micrus' financial well-being and prospects from the investing public and

16  supporting the artificially inflated price of its securities.  As demonstrated by defendants'

17  overstatements and misstatements of the Company's financial well-being and prospects throughout

18  the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and

19  omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from

20  taking those steps necessary to discover whether those statements were false or misleading.

21      48.    As a result of the dissemination of the materially false and misleading information

22  and failure to disclose material facts, as set forth above, the market price of Micrus' securities was

23  artificially inflated during the Class Period. In ignorance of the fact that market prices of Micrus'

24  securities were artificially inflated, and relying directly or indirectly on the false and misleading

25  statements made by defendants, or upon the integrity of the market in which the securities trades,

26  and/or in the absence of material adverse information that was known to or recklessly disregarded by

27  defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff

28  and the other members of the Class acquired Micrus' securities during the Class Period at artificially

1  high prices and were damaged thereby.

2    49.    At the time of said misrepresentations and omissions, Plaintiff and other members of

3  the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other

4  members of the Class and the marketplace known the truth regarding the problems that Micrus was

5  experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class

6  would not have purchased or otherwise acquired their Micrus securities, or, if they had acquired such

7  securities during the Class Period, they would not have done so at the artificially inflated prices

8  which they paid.

9    50.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange

10  Act and Rule 10b-5 promulgated thereunder.

11    51.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the

12  other members of the Class suffered damages in connection with their respective purchases and sales

13  of the Company's securities during the Class Period.

14  
15

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

16    52.    Plaintiff repeats and realleges each and every allegation contained above as if fully set
17  forth herein.

18    53.    The Individual Defendants acted as controlling persons of Micrus within the meaning

19  of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and

20  their ownership and contractual rights, participation in and/or awareness of the Company's

21  operations and/or intimate knowledge of the false financial statements filed by the Company with the

22  SEC and disseminated to the investing public, the Individual Defendants had the power to influence

23  and control and did influence and control, directly or indirectly, the decision-making of the

24  Company, including the content and dissemination of the various statements which Plaintiff

25  contends are false and misleading.  The Individual Defendants were provided with or had unlimited

26  access to copies of the Company's reports, press releases, public filings and other statements alleged

27  by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the

28  ability to prevent the issuance of the statements or cause the statements to be corrected.

1       54.    In particular, each of these defendants had direct and supervisory involvement in the

2 day-to-day operations of the Company and, therefore, is presumed to have had the power to control

3 or influence the particular transactions giving rise to the securities violations as alleged herein, and

4 exercised the same.

5       55.    As set forth above, Micrus and the Individual Defendants each violated Section 10(b)

6 and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions

7 as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the

8 Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other

9 members of the Class suffered damages in connection with their purchases of the Company's

10 securities during the Class Period.

11       **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

12       (a)    Determining that this action is a proper class action under Rule 23 of the

13             Federal Rules of Civil Procedure;

14       (b)    Awarding compensatory damages in favor of Plaintiff and the other Class

15             members against all defendants, jointly and severally, for all damages

16             sustained as a result of defendants' wrongdoing, in an amount to be proven at

17             trial, including interest thereon;

18       (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred

19             in this action, including counsel fees and expert fees; and

20       (d)    Such other and further relief as the Court may deem just and proper.

21                   **JURY TRIAL DEMANDED**

22     Plaintiff hereby demands a trial by jury.

23 Dated: November 16, 2007       SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP

24

25 

26                   Alan R. Plutzik, Of Counsel (Bar No. 077758)
                  L. Timothy Fisher, Of Counsel (Bar No. 191626)

27                   2125 Oak Grove Road, Suite 120
                  Walnut Creek, CA 94598

28                   Telephone: (925) 945-0770
                  Facsimile: (925) 945-8792

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- and -

Richard A. Maniskas
D. Seamus Kaskela
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

CLASS ACTION COMPLAINT

## CERTIFICATION

I, (print name) *TARAS  BODNARCZUK* ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

    1.      Plaintiff has reviewed the Complaint, and authorizes its filing,

    2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

    3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

    4.      Plaintiff's purchase and sale transaction(s) in **Micrus Endovascular Corp. (Nasdaq: MEND)** security that is the subject of this action during the Class Period is/are as follows:

PURCHASES

| Buy Date | Shares | Price per Share |
|---|---|---|
| 5-15-07 | 200 | 20.77 |
| | | |
| | | |
| | | |
| | | |
| | | |

SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Please list additional transactions and/or related securities (options, bonds, or preferred stock) on a separate piece of paper, if necessary.**

    5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

    6.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as described below:_____

    7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this *15* day of *NOVEMBER*, 200 *7*.

*Taras Bodnarczuk*
Signature

*TARAS BODNARCZUK*
Print Name